FILED
SUPERIOR COURT
OF GUAM

2025 MAY -6 PM 12: 47

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| L.A., a minor person with a disability by and through her parent, and G.D., a minor person with a disability by and through his parent,<br><br>Plaintiffs,<br><br>vs.<br><br>KENNETH ERIK SWANSON, Ph.D., in his official capacity as Superintendent, Guam Department of Education, et al.,<br><br>Defendants. | CIVIL CASE NO. CV0464-23<br><br>**DECISION AND ORDER RE SUMMARY JUDGMENT MOTIONS** |

In this lawsuit by students seeking redress against the Guam Department of Education's Superintendent and Board members, the Court reviews both parties' arguments for summary judgment. The Court determines that Plaintiffs L.A. and G.D. have filed claims in compliance with the Every Child Is Entitled to an Adequate Public Education Act ("the Adequate Education Act") and the Government Claims Act, signifying that this Court has subject matter jurisdiction. The Court further determines that L.A. and G.D. may seek declaratory relief in addition to injunctive relief.

For conditions that have been addressed by a Department of Public Health and Social Services inspection, the Court GRANTS GDOE summary judgment and DENIES L.A. and G.D. summary judgment relative to injunctive relief. The Court, however, DENIES summary judgment on the issue of the presence and effect of mold, a condition that DPHSS inspections do not address. That issue remains to be tried.



The Court further GRANTS G.D. summary judgment for the unsanitary conditions at Oceanview Middle School (OMS) while it operated under a failed school inspection grade, but DENIES L.A. summary judgment for failing to demonstrate an unhealthful campus at Agueda I. Johnston Middle School (AIJMS). Finally, the Court determines that the undisputed facts show that GDOE violated the Act during the times it failed to provide L.A. with a certified special education teacher and GRANTS L.A. summary judgment in that regard.

## I.        PROCEDURAL HISTORY

L.A. and G.D. filed this case[1] under the Adequate Education Act, Guam Public Law No. 28-45. L.A. and G.D. claimed that their schools—AIJMS and OMS—maintained unsafe and unsanitary learning environments in violation of the Act. Second Am. Compl. (Jan. 22, 2024).[2] L.A. further sought relief for GDOE's failure to provide her with a certified teacher. *Id.*

GDOE moves for summary judgment, arguing that there are no genuine issues of material fact relative to GDOE's provision of an adequate education for both students.[3] Def.'s Mot. Summ. J. (Aug. 27, 2024) ("GDOE Mot."). In response, L.A. and G.D. cross-moved for summary judgment, claiming declaratory relief was appropriate as undisputed facts show GDOE did *not* provide an adequate education. Pls.' Mem. in Opp'n to Def.'s Mot. Summ. J. & Cross-Mot. Summ. J. for Declaratory Relief (Oct. 25, 2024) ("Cross-Mot."). Separately, L.A. and G.D.

---

[1] GDOE has never filed an Answer to the Second Amended Complaint.

[2] GDOE argues in their Opposition to Plaintiff's Cross Motion for Summary Judgment that Plaintiffs are barred from referencing their original Complaint because they failed to request and obtain leave of court for their Second Amended Complaint to relate back to the Original Complaint. Guam Rule of Civil Procedure 15 does not require this; relation back automatically occurs when the claims arose out of the same conduct, transaction, or occurring set forth in the original pleading. That is the case here.

[3] GDOE's motion also sought summary judgment for claims by students who have since been dismissed from this action. Dec. and Order Granting Mots. Dismiss (Sept. 10, 2024).

ORIGINAL

moved for summary judgment on their request for injunctive relief. Pls.' Mot. Summ. J. for

Injunctive Relief (Dec. 2, 2024) ("Pls.' Mot.").

The Court heard the three motions on January 21, 2025. During the hearing, the Court

indicated that relative to jurisdictional issues, it was inclined to rely on *Quan Xing He v. Gov't of*

*Guam*, 2009 Guam 20, and *Kittel v. Guam Mem'l Hosp. Auth.*, 2020 Guam 3–cases the parties

had not briefed. The Court permitted supplemental briefing and took the matter under

advisement once the supplemental briefing completed on February 7, 2025.

## II.    UNDISPUTED FACTS

The following facts are undisputed based on the record presented to the Court.

### L.A. and G.D.

1. L.A. is a public school student with a disability who attends AIJMS and requires

   special education services. Decl. Paola Agostini ¶ 1 (Dec. 2, 2024).[4]

2. During the 2023-2024 school year, there were a number of absences of L.A.'s

   teachers for various reasons such as serving for jury duty, attending mandatory

   trainings, and for documented medical needs. Decl. Eliza Paulino in Support of

   Def.'s Opp'n to Pls.' Dec. 2, 2024 Mot. Summ. J. (Dec. 31, 2024) ("Fourth Paulino

   Decl."); GDOE Mot. at 15; Cross-Mot., Ex. H.

3. On June 26, 2023, Guam Legal Services Corporation submitted a claim on behalf of

   L.A. claiming that GDOE violated the Adequate Education Act by failing to provide

   a "certified teacher for every class in a ratio established by relevant collective

   bargaining agreements" and "a healthful, safe, sanitary learning environment." Pls.'

   Opp'n Def.'s Third or Suppl. Mot. Dismiss, Exs. B, C (Feb. 7, 2025). L.A.'s claim

---

[4] GDOE submits no facts to dispute L.A.'s special education status or attendance at AIJMS.

ORIGINAL

mentioned that from April 24, 2023, to the end of the 2022-2023 school year, she did not have a certified teacher in at least one of her classes in addition to having uncertified teachers when a certified teacher was unavailable. She also stated that AIJMS is not a healthful, safe and sanitary learning environment. *Id.*

4. G.D. is a public school student who attends OMS. GDOE Mot. at 4-5 (inferring G.D.'s attendance as OMS).

5. On June 26, 2023, on behalf of G.D., Guam Legal Services Corporation submitted a Government Claim that OMS does not provide a healthful, safe and sanitary learning environment for G.D., who has cerebral palsy and a history of eczema, asthma and multiple allergies. *Id.*, Exs. E, F.

**School Inspections.**

6. DPHSS developed rules and regulations surrounding school sanitation and as such conducts school building inspections and assigns schools passing or failing ratings based on the number of demerits incurred. 26 Guam Admin. R. & Regs. (GAR) §§ 4701-4722 (2022). These procedures were developed for the purpose of protecting and promoting "the health and safety of all employees and students in schools on Guam." *Id.* § 4701. These ratings directly translate into the ability of a school to receive a sanitary permit which is required to operate a school. *Id.* § 4705(a). Receiving more than forty demerits results in an immediate suspension of the school's sanitary permit. *Id.* § 4720(d)(4)(iv).

7. The inspections assess scores under the following categories: the location and premises; the building (including cleanliness of walls, floors, and classroom equipment); ventilation, temperature, and relative humidity; plumbing (including

approved sewage disposal systems); water supply; handwashing facilities; showers; restrooms; garbage and trash disposal; food protection; and safety. *See, e.g.,* Suppl. Decl. Duane Mantanona, Ex. 1 (Nov. 8, 2024); 26 GAR §§ 4705-4718. These inspections, however, do not account for mold.[5] Apr. 23, 2024 Hr'g at 10:21-22 (Test. Kenneth Swanson);[6] *see also* Suppl. Decl. Duane Mantanona, Ex. 1.

8. In July 2011, DPHSS inspected AIJMS and assigned a grade/rating of 2/A. Suppl. Decl. Eliza Paulino, Ex. 1 at 1 (Nov. 8, 2024) ("Second Decl. Eliza Paulino"). At some point thereafter, AIJMS received a sanitary permit from DPHSS that expired on June 30, 2023. Pls.' Mot., Ex. 14 at 3. This permit was on display at AIJMS on October 7, 2024—over a year and three months after its expiration. *Id.* The next documented inspection by DPHSS was on May 6, 2024, where AIJMS received a grade/rating of 38/C. Second Decl. Eliza Paulino, Ex. 1.

9. On September 29, 2022, DPHSS inspected OMS and issued a grade/rating of 56/D. Cross-Mot., Ex. F. Major deficiencies noted included:

   a. Multiple instances of standing water harboring mosquito larvae or other pest breeding sites.

   b. Rooms not kept clean, neat and orderly (e.g.: electrical cords causing a tripping hazard), affecting the overall sanitation of the facility.

   c. Doors were unclean and not tight-fitting, allowing pests to enter.

---

[5] The Public Health inspections do not officially look at mold growth as a category when issuing demerits, however, DPHSS has noted the existence of mold in its general remarks when discussing issues like cleanliness of the ceilings and walls and considers the existence of mold when assessing shower facilities. *See* Cross-Mot., Ex. F, Att. 1 at 2; 26 GAR § 4714.

[6] This testimony is also found in Exhibit H, page 64, of Plaintiff's October 25, 2024 Memorandum in Opposition to Defendant's Motion for Summary Judgment.

    d. Cockroach egg cases and droppings found throughout the school's storage areas.

    e. Indoor temperatures were too hot to provide a comfortable working and learning environment.

    f. Inadequate lighting.

    g. Handwashing sinks not connected to the sewage system, but instead draining into waste containers or clogged.

    h. No sanitary papers towels or liquid hand soap nearby sinks.

    i. Loose or stained flooring in shower rooms/rest rooms.

    j. Toilets stained and clogged with toilet tissue, feces, and urine, and no toilet paper.

10. OMS was again inspected on April 10, 2023, and received a grade/rating of 61/D. Suppl. Decl. Duane Mantanona, Ex. 1. This inspection was not provided to the Court.

11. On April 15, 2024, OMS underwent a public health inspection and received a grade/rating of 36/C. *Id.* Noted corrections were completed by June 9, 2024. *Id.*

**Mold.**

12. On July 25, 2023, GDOE published an "Update on GDOE Typhoon Recovery & Public Health Inspections" and stated that one of the top ten areas to address is "mold growing and persisting due to damp conditions and lack of air circulation." Pls.' Mot., Ex. 6.

13. A Mold Abatement/Remediation Plan was developed which listed both AIJMS and OMS as schools that were included, however, this plan is undated. *Id.*, Ex. 8.

ORIGINAL

14. Superintendent Kenneth Swanson stated this plan was for all schools in the GDOE system, there are EPA regulations around mold and spores in schools they must abide by, and the DPHSS inspections do not address mold. Cross-Mot., Ex. H.

15. In the Superintendent's June 14, 2024 Report on Priorities, GDOE's former Superintendent lists addressing mold/air quality/deep cleaning as one of the ongoing priorities. Cross-Mot., Ex. B.

16. Although GDOE has started the process to procure services for mold abatement/remediation, there is no evidence before this Court that GDOE has resolved its publicly expressed concerns regarding mold.

## III.   LAW AND DISCUSSION

### A. The Court has Subject Matter Jurisdiction.

GDOE first contends that L.A. and G.D. lack standing to bring these cases because their claims did not comply with the Adequate Education Act. The Legislature created the Adequate Education Act to provide a mechanism for school children to access the courts to vindicate their right to an adequate public education. P.L. 28-45:3. Before a student can sue in court, however, the Adequate Education Act requires the student file a claim "in the manner required by" portions of the Government Claims Act. P.L. 28-45:16 (7 GCA § 12108.1(b)); *see also* Dec. and Order Granting Mots. Dismiss at 3-7 (explaining administrative exhaustion).

One of these requirements is that the claim provide a "concise statement of the facts upon which the claim is made, including the time, place and other circumstances and the department or agency or fund of the government of Guam that is concerned." 5 GCA § 6201(c). While there is no caselaw analyzing if claims are sufficiently filed under the Adequate Education Act, there is caselaw from the Guam Supreme Court analyzing the sufficiency of claims filed under the

relevant portions of the Government Claims Act. Given that the Adequate Education Act requires claims to be filed pursuant to these same standards, the Guam Supreme Court's jurisprudence dictates how to determine if claims are properly filed.

The Guam Supreme Court in *Quan Xing He v. Government of Guam* assessed whether a claim under the Government Claims Act contained a "concise statement of the facts upon which the claim is made"—the same issue in question here. 2009 Guam 20 ¶ 27. A two-part test was developed to determine if there was strict and substantial compliance with the filing requirements. "First, the court must determine whether the claimant has complied to some extent with every statutory requirement. If so, the court then determines whether such compliance is sufficient to constitute substantial compliance." *Id.* ¶ 34. That is the "substantial" part of the test. "The only 'strict' part of this test is the requirement of having to comply (to some degree) with every statutory requirement, because there cannot be substantial compliance if there is no compliance at all; if one required element is omitted, then the court cannot determine whether the claimant has substantially complied with that requirement." *Id.* The Guam Supreme Court further stated that the purpose of the Government Claims Act "is to provide the government with sufficient information to enable it to adequately investigate claims." *Id.* ¶ 41. This sentiment was affirmed in *Kittel v. Guam Memorial Hospital Authority*, where the Guam Supreme Court stated that substantial compliance exists when there is "sufficient information disclosed on the face of the filed claim to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit." 2020 Guam 3 ¶ 15.

Here, L.A. and G.D. submitted their written, verified Government Claim to GDOE on June 26, 2023. L.A.'s claim references a time period of "from April 24, 2023, to the end of the 2022-2023 school year" and explains that "L.A. did not have a certified teacher in at least one of


ORIGINAL

her classes in addition to having uncertified teachers when her regular certified teacher was not available. Also, based upon information and belief Agueda I. Johnston Middle School is not a healthful, safe, and sanitary learning environment." Pls.' Opp'n Def.'s Third or Suppl. Mot. Dismiss, Exs. B, C. G.D.'s claim states that "G.D. has cerebral palsy and has a history of eczema, asthma and multiple allergies. Based upon information and belief Oceanview Middle School is not a healthful, safe, and sanitary learning environment." *Id.,* Exs. E, F.

The Court determines that L.A. and G.D. have complied with every statutory requirement such that there is a concise statement of the facts upon which the claim is made, including the time, place and other circumstances and the department or agency or fund of the government of Guam that is concerned. L.A. and G.D. both provide information on the time in question, with L.A. giving the specific school year and G.D. listing "middle school" which provides a confined time period, they list the schools in question, and they provide sufficient information to determine that the department of concern is GDOE. The Court determines that the statements provided by L.A. and G.D. are sufficient concise statements in that they explain the general bases of their issues, such that GDOE could make an adequate investigation of the merits of the claims and settle them without the expense of a lawsuit per *Kittel.* GDOE also had sufficient information to know that L.A.'s claim dealt with an issue of certified teachers. Additionally, based on the claims of a lack of a healthful, safe, and sanitary learning environment, combined with the information on G.D.'s chronic medical conditions, GDOE was provided sufficient information to investigate the claims by looking into issues such as the DPHSS inspections and the status of the mold remediation work. Given that L.A. and G.D.'s claims strictly and substantially complied with the Adequate Education Act, the Court determines that it has subject matter jurisdiction.



## B. Declaratory relief is available.

GDOE argues it is entitled to summary judgment because any violations of the Adequate Education Act that may have existed in the past are now corrected. As the Adequate Education Act states, an injunction may not be issued if a condition upon which a claim has been made has been corrected. 7 GCA § 20302. GDOE argues that this prohibition on injunctive relief extends to a prohibition on declaratory relief.

The Court does not agree with this assessment. While the Adequate Education Act explicitly allows for injunctive relief until a condition is corrected, the Act does not prohibit other forms of relief. GDOE cites the Court's September 10, 2024 Decision, wherein the Court wrote in a footnote that the Adequate Education Act allowed only injunctive relief. Dec. & Order Grant. Mot. Dismiss n.6. The Court takes this opportunity to clarify its previous statement. Footnote 6 was specific that injunctive relief, but not damages, was available for prevailing students. It did not rule out declaratory relief.

To be clear, L.A. and G.D. do seek declaratory relief. *See* Sec. Am. Compl. And Guam law gives the Court the ability to declare one's rights in cases of actual controversy:

> Any person . . . who desires a declaration of his rights or duties with respect to another, . . . in cases of actual controversy relating to the legal rights and duties of the respective parties, [may] bring an action in the court having jurisdiction for a declaration of his rights . . . . He may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of such rights or duties, whether or not further relief is or could be claimed at the time.

7 GCA § 26801. Declaratory relief can also be granted in addition to other remedies. 7 GCA § 26802.

Specific to declaratory relief, Plaintiffs argue that regardless of if GDOE has cured deficiencies for inadequacies, such relief provides a "clear and authoritative determination of

ORIGINAL

legal rights and obligations, which can prevent future disputes and ensure that the statutory requirements are consistently met." Pls.' Opp'n Def.'s Third or Suppl. Mot. Dismiss at 4. The Court agrees that both declaratory and injunctive relief are critical in ensuring students' rights to an adequate public education are met. Declaratory relief provides the students with an affirmation of their rights and provides legal support to prevent future violations. While the correction of violations may preclude L.A. and G.D. from injunctive relief under 7 GCA § 20302(8), any violations that have occurred may form the basis for awarding declaratory relief.

### C. Summary judgment is appropriate on some issues.

Having settled the scope of relief the Court may grant, the Court now turns to whether GDOE or L.A. and G.D. are entitled to summary judgment on the issues of whether AIJMS and OMS are healthful, safe and sanitary, and whether L.A. lacked a certified teacher. In reviewing these issues, the Court binds the parties to the requirements under the Guam Rules of Civil Procedure. This includes Rule 56(c)'s requirements that movants provide parts of the record to demonstrate the presence or absence of material issues of fact, though the Court may rely on other materials in the record. GRCP 56(c)(3).

Moreover, the Court considers that under Guam Rule of Civil Procedure 8(a), a pleading need only contain a short and plain statement of the claim. The Guam Supreme Court has confirmed that pleadings are to be construed liberally, rejecting a more stringent standard imposed by federal courts. *Ukau v. Wang*, 2016 Guam 26 ¶ 27. DOE has argued that this Court not allow L.A. and G.D. to proceed on issues that are not specifically enumerated in their initial Government Claims. Rule 8, however, allows a case to proceed if a party has given notice of a claim. The Court has already determined that L.A. and G.D.'s claims were sufficiently stated. The Court further determines here that the Second Amended Complaint, which sought injunctive

ORIGINAL

and declaratory relief, gave GDOE adequate notice of their claims.

## 1. Healthful, Safe, and Sanitary Learning Environments

Under Guam law, schools may not operate without valid sanitary permits. 10 GCA §§ 21101, 25101; 26 GAR § 4705(a). The Director of DPHSS has the discretion to conduct inspections at a frequency dependent on existing resources, health risk, the type of people served, the potential for disease transmission and injuries, and history of noncompliance. 10 GCA § 21104. Additionally, DPHSS regulations state that schools can apply for the renewal of sanitary permits no earlier than 30 days prior to their expiration dates. 26 GAR § 4705(g). Given that DPHSS has developed rules and regulations to assess the sanitation of schools and is authorized to determine whether schools can be awarded sanitary permits, the Court finds it appropriate to defer to that agency's findings.[7]

In deferring to DPHSS' evaluations, the Court examines DPHSS' grade or rating to determine if a school is adequately healthful, safe, and sanitary, specific to the items assessed in a Public Health Inspection. These items include claims such as L.A.'s concerns about the restrooms in AIJMS. For items not addressed by the inspection, like mold, the Court shall determine if these issues impact whether a school is adequately healthful, safe, and sanitary.[8]

L.A. and G.D. present numerous photos and other evidence of unsanitary conditions during times when their schools held passing inspection grades. Pls.' Mot., Ex. 14 (photos taken

---

[7] Other jurisdictions rely on their state health department's inspections to determine the existence of health hazards in schools. *See, e.g., Bd. of Educ. of the Hilton Cent. Sch. Dist. v. Gordon Ambach, as Comm'r of Educ. of the State of N.Y.*, 474 N.Y.S.2d 244, 245 (N.Y. 1984); *Macon Cty. V. Bd. of Educ. Of Decatur School Dist. No. 61*, 518 N.E.2d 653 (Ill. App. 1987).

[8] Superintendent Swanson noted in his deposition that the schools regulate mold and spores because of an Environmental Protection Agency requirement. Cross-Mot., Ex. H. As with DPHSS, the Court believes that deference should be given to expert agencies. If the parties can proffer evidence of the EPA requirements and/or assessments, the Court will consider them in its determination.

ORIGINAL

in October 2024). As the Court noted in its Decision and Order Granting Motions to Dismiss, the Court is cautioned not to substitute its own notion of sound educational policy in place of those developed by GDOE. Likewise, the Court hesitates to override or overrule health inspectors trained to know what makes a learning environment unhealthy and to direct what steps must be taken to correct unhealthful conditions. In other words, when DPHSS has certified a school as sanitary through the issuance of a sanitary permit, this Court will accept that assessment for purposes of reviewing violations of the Adequate Education Act.

Students who complain about unsanitary conditions despite a school's passing grade still have avenues of relief. For example, Guam law affords those who wish to complain about health violations the opportunity to protest directly to DPHSS. *See* 10 GCA § 20117. Students who wish to challenge the grade, DPHSS' methods, or other conditions can do so through the administrative and legal processes provided under Guam's health and safety code. But for purposes of the Adequate Education Act, a school is in compliance with the Act's requirements for a healthful, safe, and sanitary environment when it holds a passing inspection grade.

As for AIJMS, L.A. does raise sanitary concerns for periods after AIJMS's health permit expired[9] and before it obtained a new passing grade—that is, from June 30, 2023, to May 6, 2024.[10] During this time, AIJMS did not have a permit, and as such, the Court cannot rely on a

---

[9] L.A. tries to introduce an issue of fact as to when AIJMS' last sanitary permit expired. While the May 2024 inspection report indicates the previous inspection occurred in 2011, L.A. also furnished evidence of a that AIJMS had a sanitary permit on display that expired on June 30, 2023. The Court finds the latter permit—which L.A. introduced—to be credible evidence that AIJMS' prior permit expired on June 30, 2023.

[10] AIJMS had a valid permit at the time L.A. filed her claim on June 26, 2023, until the permit's expiration four days later on June 30, 2023. However, no party raised the issue of ripeness. Nonetheless, although AIJMS had a valid sanitary permit when L.A. filed her Government claim, the case ripened once the permit expired, and was ripe at the time L.A. filed her lawsuit.

ORIGINAL

DPHSS inspection. Based on the Court's review of the record, there is just one reference of a deficiency in this ten-month period. It is L.A.'s parent's statement that in October 2023, she observed a bucket with muck on the bottom next to L.A.'s desk and was told that sometimes the bucket contains foam, but apparently there was no foam in it at the time of the observation. Decl. Paola Agostini ¶ 3. The parent also noticed rust on LA.'s desk. *Id.* This sole piece of evidence of an empty bucket and rust stain do not present a genuine issue of material fact as to unsanitary conditions at AIJMS, nor does it establish that L.A. is entitled to declaratory and injunctive relief as a matter of law.

As for OMS, when G.D.'s claim was filed on June 26, 2023, OMS had a failing rating of 61/D resulting from the April 10, 2023 inspection. This rating was corrected on June 9, 2024. Thus, as with L.A., G.D. cannot avail of injunctive relief now that OMS has a valid permit. The Court must instead examine whether G.D. has demonstrated there is no genuine issue of material fact as to the condition of OMS up to June 9, 2024. Though the Court has not received the April 2023 inspection, which OMS failed, the Court knows from the September 2022 inspection that OMS suffered from major sanitation issues. Students enrolled there, including G.D., were in close proximity to mosquito breeding grounds; had to endure dirty and non-functioning bathrooms lacking hand soap and paper towels; washed their hands in sinks unconnected to sewage systems and overflowing with wastewater; studied in classrooms with air temperatures that exceeded 83 degrees; risked slipping on loose tile; and were exposed to improper food handling practices. Aff. Samuel Donato, att. 1 (Aug. 11, 2023). These were just some of the circumstances that G.D. faced as he attended OMS in the 2022-2023 school year, and which possibly amplified his eczema, asthma and allergies, not to mention detrimentally affected his ability to learn while dealing with cerebral palsy. GDOE offers no defense to these conditions

ORIGINAL

other than to say that they are now corrected. Again, while the corrections mean injunctive relief may no longer be available, this Court is prepared to declare that up until OMS passed its inspection on June 9, 2024, it violated the Adequate Education Act in allowing its campus to pose a hazard to the health of G.D.

### 2. Mold

The Court now turns to the issue of mold, which is not covered in DPHSS inspections. The parties present information illustrating the presence of mold at OMS and AIJMS. L.A. and G.D. also provide information about GDOE's work to address mold at the schools starting from July 2023. This includes GDOE's update on typhoon recovery and public health inspections to the Guam Education Board, GDOE's Mold Update and Remediation Plans, procurements in progress to address mold, a report from Superintendent Swanson in June 2024 about the priority of addressing mold, and photos from AIJMS of "mold on [the] ceiling." Cross-Mot., Ex. B; Pls.' Mot., Exs. 6, 12, 13, 14.

To the contrary, GDOE presents information arguing that mold is not present at the schools. It states that "the mold and electrical problems resulting from Typhoon Mawar were resolved after the typhoon and before SY2023-24." GDOE Mot. at 17. Further it provides a declaration from Jimmy Pangelinan, a GDOE employer in facilities and maintenance, who states that "mold remediation and abatement are not always for the existence of mold" and that "as far as [he is] concerned, there are no problems in GDOE schools currently." Decl. Jimmy Pangelinan at 2 (Dec. 31, 2024). Pangelinan further states that the mold remediation and abatement procurement plans were for the purpose of "eliminat[ing] all kinds of questions and curiosity," but not because of suspicions about the presence of mold. *Id.*

The conflicting details about the existence of mold, past and present, create genuine


ORIGINAL

issues of material fact. The Court therefore denies both parties' motions for summary judgment specific to the issues of mold. This matter must be resolved at a trial.

### 3. Certified Teacher

Finally, the Court looks to L.A.'s claims that she was not provided with a certified teacher. The Adequate Education Act states that students are entitled to have a certified teacher. 1 GCA § 715(12). It further defines "certified" as "a person hold[ing] at least the first level of professional certificate issued in accordance with standards at least as stringent as those in place on the day this Section is effective, for the position he or she holds." 1 GCA § 715(m).

When the Adequate Education Act was enacted, Guam law already required special education students to have special education teachers. In 2003, the Guam Legislature reenacted Title 17, Chapter 9 of the Guam Code Annotated, whose purpose was to "provide to all children with disabilities of public school age." P.L. 27-17 (codified as 17 GCA § 9101).[11] To that extent, the Legislature directed GDOE to ensure appropriate special education teachers for special education students. It further required GDOE to "provide . . . for the proper training and development of special education teachers, aides and staff to ensure continued quality special education services." P.L. 27-17 (codified as 17 GCA § 9104).

According to P.L. 27-17, the "stringent" standards in place at the time the Adequate Education Act came into existence already required GDOE to provide not just certified teachers, but trained special education teachers. This means that under Guam law, GDOE was required to furnish L.A., a special education student, with teachers qualified to teach her.

---

[11] P.L. 27-17 was amended by P.L. 31-158. The amendments do not alter any of the statutes referenced here.

ORIGINAL

The Court now turns to those instances in which GDOE failed to meet those standards. GDOE concedes numerous times when L.A.'s teachers were not present. According to AIJMS' principal, on at least 41 occasions, L.A.'s teacher was not present. "Of those 41 claimed absences, 26 were due to legitimate documented sickness, jury duty, or finalization of memoranda, while 12 were actually covered by certified teachers and 3 were when teachers were present but had to attend an IEP, Staffing, or ACTUM meeting." Fourth Decl. Eliza Paulino ¶ 39. Assuming that 12 of 41 teacher absences were covered by certified *special education* teachers,[12] that means 29 times, GDOE failed to meet the standards mandated by law to provide L.A. with an appropriate teacher.

GDOE contends that the teachers had legitimate excuses—illness, jury duty, or administrative work. Plainly stated, the Adequate Education Act does not make exceptions for when children can go without qualified teachers. Instead, it requires GDOE to adequately plan to ensure each student receives an adequate public education. 5 GCA § 1302(a). Moreover, this Court declines to adopt any type of sliding scale test to dictate how many days of justified absences are enough before GDOE commits a violation of the Act. This Court interprets the Adequate Education Act as written, and the Act requires GDOE to ensure L.A. has a teacher qualified to teach her.

One fact L.A. has not disputed is that "as of December 30, 2024, the condition of no certified teacher for LA. has been corrected." Fourth Decl. Eliza Paulino ¶ 42. As there is nothing in the record to dispute this, the Court finds that injunctive relief cannot be issued. However, as discussed above the Court may issue declaratory relief for prior violations. To that

---

[12] Paulino doesn't say that the covering teachers were certified special education teachers, so there could be more than 29 occasions in which L.A. did not have the properly qualified type of teacher.

ORIGINAL

end, the Court declares that on those 29 or more occasions that GDOE failed to provide L.A. with a certified teacher—that is, a teacher meeting the stringent standards for teaching L.A., a special education student—it violated the Adequate Education Act.

## IV.    <u>CONCLUSION AND ORDER</u>

In summary, the Court makes the following rulings:

The Court has subject matter jurisdiction as L.A. and G.D. filed claims strictly and substantially in compliance with the Adequate Education Act and the Government Claims Act.

The Court may award both declaratory and injunctive relief.

Regarding AIJMS having a safe and healthful environment, the Court DENIES L.A.'s Cross-Motion for Injunctive Relief, as AIJMS has a current, valid health permit.  Moreover, L.A. fails to establish as a matter of law that AIJMS did not provide a safe, healthful environment at the time when it did not have a health permit.  Accordingly, the Court DENIES IN PART L.A.'s Motion for Declaratory Relief such that this claim does not proceed to trial, with the exception of mold issues, as discussed below.

The Court GRANTS G.D.'s motion for summary judgment for declaratory, but not injunctive, relief specific to the claim of OMS failing to be a healthful, safe, and sanitary learning environment based on the DPHSS inspections and ratings for the six months prior to filing his claim until OMS received a passing inspection grade.

On the issue of mold, the Court finds there are genuine issues of material fact and therefore DENIES L.A. and G.D's motion for summary judgment for declaratory and injunctive relief such that the existence of mold implicates the schools being a healthful, safe, and sanitary learning environment.  A trial schedule shall issue for a trial relative to whether there was or is

ORIGINAL

mold present at AIJMS or OMS, and if mold exists on those campuses, whether its presence is such that it violates the Adequate Education Act.

On the issue of a certified teacher, the Court GRANTS L.A.'s Cross-Motion for Summary Judgment for Declaratory Relief but DENIES her Motion for Summary Judgment for Injunctive Relief.

**SO ORDERED, 6 May 2025.**

**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

Appearing Attorneys:
Daniel S. Somerfleck, Esq., and Philip Tydingco, Esq., Guam Legal Services Corporation, for
    Plaintiffs
Jesse Nasis, Esq., Matthew E. Wolff, Esq., and James Stake, Esq., Guam Department of
    Education, for Defendants

ORIGINAL